CHARLES D. McCLURE, Appellant, v. NATIONAL BANK OF COMMERCE IN ST. LOUIS.
CHARLES D. McLURE v. NATIONAL BANK OF COMMERCE IN ST. LOUIS, Appellant.

**In Banc, December 31, 1914.**

1. **ESTOPPEL: Must Be Pleaded.** Estoppel must be pleaded unless (1) it arises in such wise as to afford no opportunity to plead it, or (2) be shown by plaintiff's proof.

2. ———: **Holding Back Defenses.** If a case is to be tried by piecemeal the end of a lawsuit would never be reached. At the trial of the case all issues and all defenses should be brought forward.

3. ———: **Answer: Amendment After Reversal With Directions.** Where defendant's only plea in an equity suit for an accounting at the first trial was a general denial, and on appeal the cause was remanded with directions that the new trial should be confined to the single issue of the value of the land, "all other issues having been properly tried and determined," with leave to either party to so amend the pleadings "as to clearly

draw the issue upon this one question of value," defendant cannot be permitted to file a new answer bringing in the issue of plaintiff's estoppel to claim more than a specified sum, or raising the issue of ratification.

4. ———: **Accounting: Letter Agreeing to Take Less.** A letter written by plaintiff to defendant, at a time when he was in pressing need of money and pinched with debt, offering to take a certain amount of money in settlement for his interest in the land which defendant claimed absolutely, and which the court holds that defendant held in trust for him, cannot be used as an estoppel in his suit for an accounting and to recover the value of the land, sold by defendant; but is competent as evidence bearing on the issue of what plaintiff then considered the value of the land.

5. **VALUATION OF LAND: Fixed on Appeal.** Exercising its prerogative to try an equity case *de novo*, the Supreme Court holds that, in the valuation of sixty-five acres of land belonging to plaintiff and bought in by defendant under a friendly foreclosure sale, and then wrongfully sold by it, thereby converting the proceeds, the trial court fell into error in disregarding the value of the improvements, such as dwelling house, barn, etc., and the chancellor's valuation of $52,500 is raised to $58,887.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

REVERSED AND REMANDED (*With directions.*)

*Thomas Bond* and *W. G. Schofield* for plaintiff.

(1) The value of land should be ascertained by evidence of what the same was reasonably worth and could have been sold for at a given time, on a sale by one willing, but not obliged to sell, to one willing and able but not obliged to buy. Railroad v. Knapp Stout & Co., 60 Mo. 410; Riley v. Cullen, 101 Mo. App. 43; Lawrence v. Boston, 119 Mass. 126. (2) The per curiam order required the trial court to try the single issue of the value of the land in July, 1909, "all other issues having been properly tried and determined be-

fore.'' Therefore, to have permitted defendants to file their amended answer and to introduce evidence in support of the defenses therein attempted to be raised, to-wit, estoppel and ratification, would not only have been contrary to the positive mandate of this court, but any finding thereon would have been·*coram non judice,* and of consequence void. Chouteau v. Allen, 74 Mo. 59; Keaton v. Jorndt, 259 Mo. 179. The pretended defenses of estoppel and ratification sought to be injected into this case by defendant are not only contrary to the mandate. of this court, but contradictory of the entire position assumed by the defendant in the original trial and upon which the defendant staked its case; i. e., that the property in question belonged to the defendant and that plaintiff had absolutely no interest therein. See opinion of Judge Graves herein, 252 Mo. 510. DeLashmutt v. Teetor, 261 Mo. 412.

*George L. Edwards* and *Edward D'Arcy* for defendant.

(1) The trial court should have permitted the defendant after this case was remanded for further hearing to have amended its answer so as to set up the defense of estoppel as proposed. *Per curiam* opinion on prior appeal, 252 Mo. 524. (2) The prior opinion in this case cannot fairly be construed as foreclosing to the defendant the question of estoppel sought to be raised by the amended answer which it proposed to file in this case, for two reasons. First, this question was not raised or determined on the former appeal, and upon the theory upon which the case was tried before this question could not have been raised. This case was first tried upon the theory that it was a suit for an accounting for the proceeds of the sale of the property, and in affirmance of that sale. It would be manifestly unjust and inequitable, therefore, to say

that this defense was foreclosed to the defendant by the prior opinion in this case. Second, even if the prior opinion could be construed as foreclosing this defense, it would be manifestly unjust and inequitable, and should, therefore, be modified so as to permit of a full and fair consideration of this defense. Mangold v. Bacon, 237 Mo. 511. (3) The plaintiff is estopped to contend that the reasonable market value of the property at the time it was sold by the defendant was more than $40,000. Riley v. Cullen, 101 Mo. App. 32; 16 Cyc. 785; Bigelow on Estoppel (6 Ed.), pp. 602-603; Sedgwick on Damages (9 Ed.), sec. 1301.

FARIS, J.—This is a suit in equity which comes to us upon cross-appeals. Since a decision of one appeal will necessarily dispose fully of the other, the cases, by consent of counsel, have been consolidated. Both cases, and all points involved therein, will be disposed of in one opinion.

This is likewise the second cross-appeal in this case. All of the facts of the case and all of the points involved, except the one issue hereafter to be adverted to, are set forth and disposed of upon the former cross-appeals, our rulings upon which will be found in the case styled McLure v. Bank of Commerce, 252 Mo. 510. Reference for the facts and the matters held in judgment upon the former appeals, is hereby made to the former opinion, should the curious desire more light or should such light become necessary to an understanding of the points in the below opinion.

When the case was here before our learned Brother GRAVES, who wrote the opinion of the court, took the view that the case ought to be reversed and remanded with directions to the court *nisi* to enter up judgment in accordance to the views expressed in the opinion. Our Brother GRAVES upon the very important point as to the value of the land in dispute, held under the evidence in that record, that this land was

worth the sum of $58,887. A majority of us, however, yielded to the earnest insistence of counsel for defendant that the rulings of the lower court and the allegations of plaintiff's petition being regarded, defendant might have been led, to his hurt, not to offer on the measure of value all available testimony. Defendant most strenuously insisted that this was the case, and that much testimony in proof of his contention that the land in question was of a value far less than that found by our Brother Graves, was readily obtainable. In fairness, therefore, and gathering as stated, from the record, that counsel might well have been misled to his hurt, we sent the case back for a new trial, by a *per curiam* opinion, on the single issue of the value of the land. In that opinion it was expressly provided that the new trial should be confined to that single issue, and it was further ruled that "all other issues had been properly tried and determined before." Permission, however, was given by our opinion to either party to so amend the pleadings as to clearly draw the issue upon this question of value of the land in dispute.

When the case went back to be retried below plaintiff amended his petition by interlineation in such wise as to raise with sufficient clearness the issue as to the value of the land in dispute on the date in 1909 when this land was wrongfully, as our former opinion held, sold by defendant. The defendant thereupon asked leave to so amend its answer as to raise for the first time in the case the issue as to whether plaintiff by statements made by him and his agent, one Mellor, to defendant in 1908, had not led defendant to believe that the land in question was worth only the sum of $40,000, thus, by the proposed amended answer, raising the issue of estoppel. Likewise the proposed amended answer raised the issue that plaintiff had ratified and approved the sale by defendant of the land at the sum and price of $38,000. Defendant's theory of ratifica-

tion is based upon a letter of plaintiff to defendant, dated January 4, 1910, in which plaintiff, replying apparently to a written demand for the settlement of plaintiff's account, asks that he be given credit for the sum of $20,000, which he says was the surplus proceeds of the sale of the land in dispute after payment of the amount advanced by defendant to buy the land in at the foreclosure sale. The proof shows defendant then refused to give any credit to plaintiff on this account, and claimed to have owned the said land absolutely at the time it was sold to Mrs. Koehlor. Upon objection of plaintiff to the filing of the amended answer containing the two new defenses of estoppel and ratification, leave to file same was denied by the court and the objections of plaintiff thereto were sustained. Plaintiff and defendant then proceeded to trial upon the issue as to the value of the land alone. Defendant was permitted to offer apparently all evidence desired and available to it upon the issue of estoppel and ratification, though the probative effect of such evidence was by the ruling of the trial court confined solely to its competency as showing the value placed upon said land by plaintiff shortly preceding the date of the sale thereof.

The learned trial court, upon the conclusion of all evidence upon the issue of the value of the land, found that the same was worth the sum of $52,500 as of the date this land was sold by defendant, and made an accounting between the parties and rendered a decree upon the basis of this value. From the finding of the court plaintiff appealed upon the ground that the value placed on the land by the court was smaller than was justified by the evidence offered. Defendant has appealed because such value was too large, and upon the further ground that it was error for the court to refuse to defendant permission to file the amended answer containing the said allegations of es-

toppel and ratification. The below opinion will be confined to a discussion of these points only.

I. As forecast in our statement of the case both sides being dissatisfied with some part of the decree, have appealed; the plaintiff for that the value of the land as the court *nisi* found it, was too little, and the defendant for that it was too big, and for the further reason that it was error for the trial court to refuse defendant permission to amend its answer so as to set up estoppel and ratification as defenses.

Amending Pleadings After Appeal.

Since we may logically deal with the respective contentions of the parties touching the finding as to the value of the land under one and the same head, we will first examine the contention of alleged error based upon the refusal of the court to permit an amendment of defendant's answer.

When this case was here before it had been tried below upon a mere general denial. No estoppel of whatever sort was pleaded by defendant. It contented itself by saying for defense, this only: "Defendants in the above-entitled cause, answering the petition of the plaintiff, say they deny each and every allegation therein contained."

This court on the former appeal approved all that was done by the trial court, except that, upon the insistence of defendant that it had been so misled by the attitude of plaintiff and by the ruling of the trial court that it had failed to offer much obtainable testimony as to the value of the land in dispute, we held, as we say in the statement, that in the interest of fairness we ought to send this case back and allow defendant to offer any additional evidence it might have upon this question. So, while agreeing to all that was said upon the merits, a majority of us disagreed with the opinion only as to the finality of the amount found as the value of the land. On this question we made in

our opinion *per curiam*, among others, these observations, viz:

"A majority of the court, however, are of the opinion that the cause should be remanded to the end that the issue of the value of the land may be more thoroughly tried, and the whole court is of the further opinion that the new trial should be confined to that single issue, all other issues having been properly tried and determined before. Either party may so amend the pleadings, if such is desired, so as to clearly draw the issue upon this question.

"The judgment is therefore reversed and the cause remanded to the circuit court with directions to hear testimony upon the value of the land in dispute at the date of the sale, and to confine such new trial to that issue alone, and after having determined such value to then enter up judgment in accordance with the facts heretofore found and then found upon this issue."

Estoppel must be pleaded (Loving Co. v. Cattle Co., 176 Mo. 330; Cape Girardeau, etc., Ry. Co. v. St. Louis & Gulf Ry. Co., 222 Mo. 461), unless it arises in such wise as to afford no opportunity to plead it (Long v. Lackawanna Coal & Iron Co., 233 Mo. 713); or be shown by plaintiff's proof (Brown Construction Co. v. MacArthur Bros. Co., 236 Mo. 41). The general denial set out above shows that estoppel was not pleaded upon the former trial. The former opinion does not refer to such a defense. [McLure v. Bank, 252 Mo. 510.] The case does not fall within either of the exceptions, and even if it could be said to fall upon the facts within the exception secondly above noted and to have been shown by the cross-examination of Mellor, who was one of plaintiff's witnesses, yet it was not either tried below on the former trial, or ruled here upon any such theory. For, since estoppel was not pleaded in the former trial, it follows that such issue was not raised. If a case could be tried piece-

meal, we would never reach the end of a lawsuit. [Spratt v. Early, 199 Mo. 491; Donnell v. Wright, 147 Mo. l. c. 647.] If all issues arising in the case and all defenses which defendant then had were not in it before, they should have been in it. [Hastings v. Foxworthy, 45 Neb. 676, 34 L. R. A. 321, and notes; 2 R. C. L. 224.] The issue of estoppel (except in so far as the evidence of the alleged facts, which go to make up the proof of it, also serves to throw light upon the value of the land involved in this case) being an issue upon the merits, went out of this case upon the rendition of the former judgment here. For we reversed and remanded this case *with directions.* Thereby all other matters were concluded by our judgment except the single one set out in those directions. [Stump v. Hornback, 109 Mo. 272; Pitkin v. Shacklett, 117 Mo. 547; Tourville v. Railroad, 148 Mo. l. c. 623; Young v. Thrasher, 123 Mo. 308; Chouteau v. Allen, 74 Mo. 56; Keaton v. Jorndt, 259 Mo. 179.] Certainly this is so where no statute and no controlling opinion of this or any other court was overlooked by us, and where no injusice has been done to defendant by our former holding, when viewed in the light of the instant record. [Baker v. Railroad, 147 Mo. l. c. 149, and cases cited; 2 R. C. L. 226.]

We do not think there can be two views as to what the former judgment reversing this case directed the trial court to do. The only tenable view would seem to be settled from this compelling language found in our *per curiam* opinion, viz: ''The whole court is of the further opinion that the new trial should be confined to that single issue, all other issues having been properly tried and determined before. . . . The judgment is therefore reversed and the cause remanded to the circuit court with directions to hear testimony upon the value of the land in dispute at the date of the sale, and to confine such new trial to that issue alone.''

It is true that qualified permission, conditioned upon whether counsel were so advised, was given to amend the pleadings. But does that prove anything of pith or moment in aid of defendant's insistence? Does it mean that defendant should be allowed for the first time to inject into this case an entirely new matter of defense, which matter was then wholly within its knowledge and available to it upon the first trial, and touching the proof of which there was more uncontradicted evidence offered in the first trial than in the instant one? Does the language of this court's opinion mean the actual value or worth of this land to A and B and C in the market, or does it mean the fictional value as between plaintiff and defendant bank, which fictional value was superinduced by the attitude of the witness Mellor as the agent of plaintiff? We think it fairly means the former, and that the alleged matter of estoppel properly belonged to, and ought to have been in the former trial, and that it was foreclosed in the former appeal.

The law as to the effect of our holding upon a former appeal is fairly well settled, and from the case of Chouteau v. Allen, 74 Mo. 56, to the late case of Keaton v. Jorndt, 259 Mo. 179, there has been in our holdings neither change nor shadow of turning. In fact, we do not understand learned counsel for defendant to challenge the rule of law which, as the Chouteau-Allen case, supra, expresses it, makes the mandate of this court "in the nature of a special power of attorney" to the court *nisi* in the new trial. The difficulty lies in the fact that learned counsel take the view that the defense of estoppel operating to limit the value of the land to $40,000, was within the contemplation of our mandate. We do not agree with them in this contention. Granting for argument's sake that under our mandate defendant could by estoppel limit the finding of value to $40,000, being the price at which plaintiff in the summer and fall of 1908 was willing to

sell, still the evidence of Mellor, upon whose testimony the alleged estoppel is largely based, now tends to show that the offer of plaintiff through said Mellor to sell in 1908 for $40,000, was dominated, as defendant knew, by the pressing need of ready money with which to pay the debt due to defendant bank, for payment of which, or for additional collateral, said defendant was almost diurnally insisting. In addition to this in June, 1909, when the sale to Mrs. Koehlor was made defendant bank had so far ceased to regard plaintiff as having any interest in this land as that it sold it for its own account and pocketed the entire purchase-price; refusing subsequently to give plaintiff any credit whatever for the $20,000 difference between the price paid by Mrs. Koehlor and the price at which the land was bought in at the friendly foreclosure sale. We cannot lend our concurrence to a view of estoppel based upon an attitude which said in effect to plaintiff: "Your willingness to sell this land for $40,000 so that you could pay your debt to us, in the fall of 1908 when you owned it, so worked upon us in the summer of 1909, after we had become owners of it, as that we were induced to sell it for $38,000 and keep all of the money."

In passing we pause to say that no absolute ratification as is urged upon us by defendant can fairly be based upon the letter of plaintiff of January, 1910. The latter for the sake of peace and to procure the release to him of his dividend-bearing collateral, might have been willing to accept the surplus of $20,000 then, without a lawsuit, acquiescing thus and ratifying the sale to Mrs. Koehlor. But when defendant bank utterly refused to concede any interest in this surplus to plaintiff and profanely informed him that "not one cent of credit" was to be given plaintiff on account of this land, does not a doctrine which is concededly not estoppel but which in common sense is very analogous to it, arise logically in favor of plaintiff? In the form-

er trial this was likewise the attitude of defendant bank throughout its defense. Absent the profanity, it took the position of absolute ownership taken *in pais* by it, and held this attitude upon all the pleadings and upon the trial and until driven from it by our mandate.

Defendant had the full benefit of all of the evidence which it now urges upon us as proof of estoppel, so far as this evidence operated to prove the view held by plaintiff in the fall of 1908 as to the value of this land. This is in our opinion all it was entitled to under the facts and the law of this case. Therefore the trial court did not err in refusing to allow the filing of the proposed amended petition, and we are constrained to disallow this assignment of error.

II. Which brings us to the contention of plaintiff that the finding of the trial court that the land in dispute was worth $52,500, as of the day in 1909 when defendant bank sold it, was too low, and to the counter contention of defendant that the said sum was too high. Upon this question of value plaintiff called, if we include plaintiff himself, an even dozen witnesses. For the most part these witnesses all either lived in the vicinity and had dealt in county real estate, or had much experience in the buying and selling of real estate in the neighborhood of this land. In our view, with the probable exception of the witness Bryce and the witness Ryan, they each showed themselves qualified to testify as experts on value of land of the location and sort of that in dispute.

The plaintiff fixed the value of the land at $75,000, which included the permanent improvements. He testified that for the purchase of the land and for improvements of whatever kind, both permanent and perishable, he had expended some $100,000, but that of this amount the sum of $25,000 was for shrubbery,

Accounting.

hedges, vineyards and other ornamental things, perishable and ephemeral and of which he took no account. There was in 1909 a seventeen-room brick house on the land. This house was old, but had been repaired under the superintendence of an architect and he had installed practically all of what are now usually called "modern improvements," viz: hot and cold water, porcelain bath, system of lighting, etc. There were in addition a barn and a new cottage for servants and farm hands. These permanent improvements plaintiff valued in 1909 at from ten to fifteen thousand dollars. No witness contradicted the plaintiff as to the value of the improvements, except indirectly by admitting or by stating, that in certain contingencies (e. g. in subdividing, for the sale of the land in lots, or in case the purchaser for a country home desired a finer residence) the improvements would not be an asset but a liability and would but cumber the earth, as did the "old mansions on Lucas Place."

In addition to plaintiff and to said Bryce and Ryan, the two latter of whom fixed the value at $65,-430 exclusive of improvements, and $64,000 apparently including improvements, respectively, but whose testimony is of doubtful weight, the witnesses for plaintiff fixed the following values to this land: McDermott, $1,000 per acre, or $65,430; Darst, $850 per acre or $56,615; Givans, $900 per acre or $58,887; Surkamp, $900 per acre, or $58,887; Sidebotham, $1,000 per acre, or $65,430; Dowler, $950 per acre, or $62,300; Zeibig, $800 per acre, or $52,344; Dittmeier, $900 per acre, or $58,887; and Henderson fixed the worth of twenty-five acres of the land only, with the improvements thereon, at $62,500. All of these witnesses, except Henderson, Ryan and the plaintiff, based their figures on the value of the bare ground, exclusive of the improvements.

Defendant called six witnesses, viz: Messrs. Hufft, Kaufman and Gibson, who each fixed the value at $600

per acre, or $39,258; Messrs. Schoflin and Watkins, who each fixed the value at from $550 to $600 per acre, or from $39,258 to $35,986.50, and Mr. Lilburn I. McNair, who fixed the value, with a deal of shuffling, at the price for which his real estate concern had originally sold the land to Mrs. Koehlor, viz: $38,000. This witness was still in the mental attitude held by him in the former trial. [McLure v. Bank of Commerce, 252 Mo. 1. c. 523.] Messrs. Kaufman, Schopflin and Gibson were employees of the Mercantile Trust Company, which latter company had been employed to make an appraisement of this land. Counsel for defendant frankly conceded that they expected to compensate the Mercantile Trust Company for the experts furnished and the witness Watkins admitted frankly that he expected compensation for his trouble in qualifying himself to place a value on this land; as likewise did the witness Hufft.

The learned trial judge took the lowest value placed on this land by any of the witnesses for plaintiff, that is to say, that of Mr. Zeibig, who fixed the value, exclusive of improvements, at $52,500. The court below took no account of the value of the improvements. In this, in the light of the great weight of the testimony, we think he fell into error. In the condition of this record, and in view of the opinion held by us before, on a showing (we stray from the record to say) weaker, comparatively, than that now before us, we do not feel inclined to fix a value less than that found before by us. So, exercising the right given us in an equity case to try the issues *de novo,* we find the value of this land at the date of the sale thereof by defendant to Mrs. Koehlor in 1909, to have been $58,887.

A recasting of the accounts between plaintiff and defendant had pursuant to the decree of the court below, will, we are advised by counsel and assume from the record, leave in the hands of defendant certain

payments made to defendant bank either as dividends, or as the profits arising from the liquidation of col-lateral deposited with it by plaintiff. The ascertain-ment of the amounts thereof is a matter, we gather, of mere book-keeping detail, susceptible of mathemat-ical adjustment without difficulty. We here take no account of these profits and dividends which have been collected by defendant bank, if any such there be, but leave them for adjustment upon the return from de-fendant bank to plaintiff, pursuant to the decree, of the collateral out of which they accrued.

It follows that this case should be reversed and remanded with directions to find the value of the land in dispute at the sum of $58,887, and to recast the ac-count between plaintiff and defendant upon the basis of such value; decree in all other respects to be as en-tered by the trial court; saving, however, the said mat-ter of accrued dividends and profits, if any, to be here-after adjusted between the parties. It is so ordered. All concur, except *Bond, J.*, who having been of counsel does not sit.