CASES ARGUED AND DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

## APRIL TERM, 1922.

---

(*Continued from Volume* 293).

---

THE STATE ex rel. NORBORNE LAND DRAINAGE
DISTRICT COMPANY OF CARROLL COUNTY
et al., v. RALPH HUGHES, Judge of the Circuit
Court of Ray County, et al.

In Banc, April 29, 1922.

1. **PROHIBITION: Drainage District Law: Suit to Cancel Tax Assess-
ment: Jurisdiction of Circuit Court: Venue.** Section 4379, Revised
Statutes 1919, fixes the original venue of all actions affecting
drainage districts organized under what is now Article 1 of Chap-
ter 28, Revised Statutes 1919, and such venue is the county in
which the articles of association of the particular district have
been filed. Therefore the circuit court of another county, in
which lies a part of the lands embraced within said drainage.
district, has no jurisdiction of a suit, brought by the owners of
such part of such lands, to cancel, as a cloud upon their title to
their lands, assessments of benefits thereon made, in accordance
with the drainage district law, by the circuit court of the county
in which said articles of association were filed, and it will be
prevented from assuming jurisdiction of such suit by the writ of

prohibition. [Per ELDER, J.; WOODSON, HIGBEE and WALKER, JJ., concurring; GRAVES, J., concurring in separate opinion.]

2. ——: ——: ——: **Constitutional Law.** The Circuit Court of Carroll County made its decree incorporating a drainage district in accordance with the law 'applicable thereto, the articles of association being filed in said county. Thereafter that court extended the boundary of said district so as to include lands in Ray County and made certain assessments of benefits on such lands, in accordance with the Act of 1913 (Laws 1913, p. 232). The owners of such lands thereafter brought suit in the Circuit Court of Ray County to cancel these assessments as a cloud upon their title to their lands, and in their petition in such suit asserted that Section 40 of the Act of 1913, under which such action of the Circuit Court of Carroll County was taken, violated Section 1 of Amendment 14 of the United States Constitution. In this proceeding in prohibition to prevent the Circuit Court of Ray County from assuming jurisdiction of such suit, the constitutionality of said section is directly in issue, and it is *held* that said section is constitutional and valid inasmuch as it gives all interested parties their day in court to be heard upon questions of vital interest to them, and is, therefore, due process of law, and they are not deprived of the equal protection of the law. [Per GRAVES, J.; JAMES T. BLAIR, ELDER, HIGBEE, DAVID E. BLAIR and WALKER, JJ., concurring.]

## Prohibition.

PRELIMINARY RULE MADE ABSOLUTE.

*S. J. & G. C. Jones, Conkling & Withers* and *Franken & Timmons* for relators.

(1) The Circuit Court of Ray County was not the proper venue for the suit filed therein for the following reasons: (a) Sec. 4379, R. S. 1919, fixes the venue of all actions affecting drainage districts organized under the 'Circuit Court Act of 1913 in the county organizing the district. In this case such county is Carroll County. Said act is a code complete within itself, and providing its own venue, no other venue will lie. State ex rel. v. Norborne Land Drain. Dist., 234 S. W. 348. (b) If said act does not provide its own venue, still said suit

should have been brought in Carroll County as its purpose is to annul judgments rendered by the Carroll Circuit Court. Section 1951, R. S. 1919; Capitain v. Trust Co., 240 Mo. 495. (2) The Circuit Court of Ray County has no jurisdiction of the suit pending therein because said suit attempts to annul judgments rendered under the provisions of said Circuit Court Act of 1913 by a method of procedure unauthorized by said act. Both the mode and extent of review of judgments·rendered under said act are provided for therein and same are exclusive. Therefore a suit in equity will not lie. State ex rel. v. Norborne Land Drainage Dist., 234 S. W. 348. (3) (a) The Circuit Court of Ray County has no jurisdiction of the suit pending therein because the petition in said suit does not state a cause of action of which a court of equity has jurisdiction. It does not allege any equitable grounds for the annullment of the judgments sought to be cancelled. Craig v. Bright, 213 S. W. 846; Fitzgerald v. Special Road Dist., 195 S. W. 697; McDonald v. McDaniel, 242 Mo. 175; 23 Cyc. 1002, 1003, 1014. (b) The petition in said suit in Ray County failing to state a cause of action in equity and not being subject to amendment that will state other than a new cause of action, prohibition will lie. State ex rel. v. Wood, 155 Mo. 425; State ex rel. v. Denton, 229 Mo. 200; Reed v. Bright, 232 Mo. 399; State ex rel. v. Barnett, 245 Mo. 115; State ex rel. v. Shelton, 249 Mo. 660; State ex rel. v. Dearing, 253 Mo. 604; State ex rel. v. McQuillin, 256 Mo. 705; State ex rel. v. Calhoun, 234 S. W. 855, 226 S. W. 329. (4) The Circuit Court of Ray County is further without jurisdiction because no landowners in the district are parties defendant to the suit filed therein. The court, therefore, has no parties against whom it can render a judgment. Hence prohibition lies. State ex rel. v. Shelton, 249 Mo. 660.

*Paul D. Kitt, Frank Atwood* and *Perry S. Rader* for respondents, Charles D. Cole et al.

State ex rel. v. Hughes.

(1)    All drainage taxes levied under the authority of the Act of 1913, including the "total tax" levied to pay the costs of completing the drainage works and the annual installment and maintenance taxes, and all penalties, from the date of filing the "Drainage Tax Record" in the office of the Recorder of Deeds, constitute a lien against the lands in the county wherein they are situate, and said lien is paramount to all other liens except the lien for state, county, school and road taxes. Secs. 23, 24, Laws 1913, pp. 246, 247.   In the petition of these respondents filed in the Ray Circuit Court it is alleged that said levy of taxes has been made, that said drainage tax book has been filed in the office of the Recorder of Deeds of Ray County, and that said levy and book constitute a lien on their lands; and the petition of relators states that the board of supervisors of said drainage district has levied benefit assessments against all the lands in the district to the amount of $1,088,992.65, and that said assessments are evidenced by drainage tax records, duly made and certified, which are now on file in the offices of the Recorders of Deeds in Ray and Carroll Counties.    (2)    A bill in equity may be maintained by the owner of land to cancel a void levy of special taxes. and to remove the same as a cloud upon the title.   Verdin v. St. Louis, 131 Mo. 26;  Skinker v. Heman, 148 Mo. 354;  Bonsor v. Madison County, 204 Mo. 99;  Pocoke v. Peterson, 256 Mo. 519;  Wilcox v. Phillips, 260 Mo. 690; Sec. 1970, R. S. 1919;  Voights v. Hart, 285 Mo. 118; McPike v. Pen, 51 Mo. 63;  Newmeyer v. Railroad, 52 Mo. 83;  Ranney v. Bader, 67 Mo. 477;  Valle v. Ziegler, 84 Mo. 218;  Dennison v. City of Kansas, 95 Mo. 429; St. Louis & S. F. Ry. Co. v. Apperson, 97 Mo. 310; Regan Land Co. v. Carthage, 129 Mo. App. 632;  Perkins v. Baer, 95 Mo. App. 70;  Sneathen v. Sneathen, 104 Mo. 201;  Harrington v. Utterback, 57 Mo. 519;  Truesdail v. McCormick, 126 Mo. 39;  State ex rel. Bayha v. Philips, 97 Mo. 331;  Bayha v. Taylor, 36 Mo. App. 434;  Rich v. Braxton, 158 U. S. 375.    (3)    The suit of Cole et al. to have the tax levy cancelled and the lien thereof removed

as a cloud upon their Ray County lands, was properly
brought in the Circuit Court of Ray County. The suit
affects title to real estate. A suit to enforce the lien of
any special tax bill would have to be brought in the coun-
ty where the lands are situate, and therefore a suit to
remove the levy of special taxes as a lien on the lands
must likewise be brought in the county where the lands
are situate. Ray County was the proper venue. Sec.
1179, R. S. 1919; State ex rel. v. Reynolds, 265 Mo. 91;
State ex rel. v. Grimm, 243 Mo. 675. (a) The allegation
in the petition for the writ of prohibition that "the pray-
er for the removal of a cloud on title is only incidental
to the main relief sought by the petition of the plain-
tiffs" is a mere conclusion of law. "The allegation in
a petition of a mere conclusion of law raises no issue,"
and is not admitted by demurrer. State ex rel. v.
Barnett, 245 Mo. 115. The suit to remove the cloud upon
plaintiffs' lands is not incidental to the main issue in the
suit in the Circuit Court. The main purpose of that suit
is to remove the cloud cast upon the title of plaintiffs'
Ray County lands by the void levy of taxes made in
pursuance to the unauthorized decrees of the Circuit
Court of Carroll County. The plaintiffs care nothing
about those decrees if the tax levy is removed from their
lands. (b) The case of Capitain v. Trust Co., 240 Mo.
495, is different in its facts from those of the case pend-
ing in Ray County, and does not apply to determine the
venue. (c) Relators' insistence that the plaintiffs' suit
is one to annul judgments of the Circuit Court of Car-
roll County is necessarily an admission that said suit is a
direct attack upon said judgments, and not a collateral
attack. (4) If the decrees of the Circuit Court of Car-
roll County were made in the exercise of judicial power,
and were unauthorized, because said court had no power
to make them or because the statute which it was sup-
posed gave the court said power was unconstitutional,
as is alleged, the Circuit Court of Ray County has juris-
diction to cancel the levy of taxes made on Ray County
lands based upon said decrees. Wonderly v. Lafayette

Co., 150 Mo. 636; Keyte v. Plemmons, 28 Mo. 104; Ry. Co. v. Callicotte, 267 Fed. 804; Jewett v. Boardman, 181 Mo. 656; Holton v. Towner, 81 Mo. 366; Cox v. Boyce, 152 Mo. 581; Austell v. McLarin, 51 Ga. 467; Sav. & Loan Assn. v. Chase, 118 Iowa, 51; Hovey v. Elliott, 169 U. S. 409. (a) If the Circuit Court of Carroll County had no power to render the judgment, as alleged in respondents' petition, said court had no jurisdiction of the subject-matter and its decree is a nullity, and can be collaterally attacked. *Ultra vires* judgments are not binding on any one. O'Day v. McDaniel, 181 Mo. 529; Eager v. Stover, 59 Mo. 89; State ex rel. v. Woodson, 161 Mo. 444. (b) Jurisdiction of the subject-matter is power to adjudge concerning the general questions involved, and is not dependent upon the state of facts which may appear in a particular case arising, or which is claimed to have arisen, under that general question. Jurisdiction of the subject-matter is the power, lawfully conferred, to deal with the general subject involved in the action. Hunt v. Hunt, 72 N. Y. 217; State ex rel. v. Smith, 104 Mo. 422; State ex rel. v. Neville, 110 Mo. 358; Musick v. Ry. Co., 114 Mo. 314. (c) Consent can not confer jurisdiction of the subject-matter. Parker v. Zeisler, 139 Mo. 299; Johnson v. Detrick, 152 Mo. 253, II. (d) Jurisdiction is authority to hear and determine a cause. State ex rel. v. Stobie, 194 Mo. 45. (e) The petition of these respondents filed in the Circuit Court charges that the statute gave to the Circuit Court of Carroll County no power to extend the boundaries, and that it therefore had no jurisdiction of the subject-matter. An unconstitutional law is no law at all. In re Flukes, 157 Mo. 127; Henderson v. Koenig, 192 Mo. 710. (f) The petition of these respondents filed in the Circuit Court charges that Section 40 of the Act of 1913, under which the Circuit Court of Carroll County undertook to extend the boundaries of the drainage district so as to include their lands in Ray County, is violative of the Fourteenth Amendment, in certain designated matters, very similar to those considered in this Flukes Case, and

that therefore said Circuit Court had no power to extend
the boundaries and its decree is void.  (5)  The decree
of the Circuit Court of Carroll County of August 12,
1918, by which it attempted to extend the boundaries
of the drainage district, and its decree of December 23,
1919, by which it assessed special taxes on the lands of
these respondents, were not made in the exercise of its
judicial power, but in the exercise of its legislative pow-
er, and are in no sense judgments of a court of general
common law jurisdiction.  State ex rel. v. Dawson, 284
Mo. 291;  State ex inf. v. Norborne Land Drain. Dist.,
234 S. W. 444;  State ex inf. McAllister v. Albany Drain.
Dist., 234 S. W. 339;  State ex rel. v. Nast, 209 Mo. 721.
(a)  Being the exercise of legislative power, its decrees
are to be considered, in all respects, just as are the ordi-
nances by which a city attempts to levy special taxes for
street improvements.   And if said decrees are out of
harmony with the statute which conferred said legislative
power, the levy of special taxes by it can be removed as
a cloud upon title, by a suit in equity, just as the levy of
special taxes for a street improvement.   Verdin v. St.
Louis, 131 Mo. 26;  Warren v. Barber Pav. Co., 115 Mo.
572;  State ex rel. v. St. Louis, 161 Mo. 378;  Bank v.
Evans, 51 Mo. 344.  (b)  In the case of In re Birming-
ham Drainage District, 274 Mo. 152, it was ruled that
the assessment and levy of taxes is a legislative function,
and that the circuit court in levying taxes on behalf of a
drainage district exercises the same functions as does
a city in the assessment and levy of taxes for street im-
provements.  In State ex rel. v. Dawson, 284 Mo. 291,
it was held that the extension of the boundary lines of
a drainage district was the exercise of legislative power.
In both cases it was held that the circuit court in assess-
ing benefits and in extending the boundaries was a legis-
lative agent.  If it was a legislative agent it was not
a court, and what the statute calls a "decree" was in no
sense a judicial judgment.  (6)  No demurrer or answer
to the petition of these respondents was filed in the cir-
cuit court.  The case had not been reached for trial when

the application for the writ of prohibition was made. The petition in the main suit was amendable, and plaintiffs had the right to file an amended petition as a matter of course, and to assign therein any other pertinent grounds why said tax levy was invalid and said decrees of the Circuit Court of Carroll County were in excess of its power to make.- Under such circumstances, allegations in the petition for the writ that the petition filed in the trial court does not state a cause of action, go for nothing, unless it clearly appears from the petition filed in the circuit court that such court does not have and cannot have jurisdiction to try the cause.  State ex rel. v. McQuillin, 262 Mo. 268; State ex rel. v. Wood, 155 Mo. 470; State ex rel. v. McQuillin, 256 Mo. 704; State ex rel. v. McQuillin, 260 Mo. 176; State ex rel. v. Hough, 193 Mo. 650; State ex rel. v. Robinson, 257 Mo. 592; State ex rel. v. Shields, 237 Mo. 334; State ex rel. v. Lucas, 236 Mo. 30. (7)   The fact that no landowners in the drainage district are made parties defendant in the suit to cancel the tax levy does not oust the Ray County Circuit Court of jurisdiction of said suit.  Sec. 1226, R. S. 1919;  Horstkatte v. Menier, 50 Mo. 158;  Johnson v. United Rys., 247 Mo. 328;  Crook v. Tull, 111 Mo. 283.   (8)  It is contended by relators that the Circuit Court Drainage District Act of 1913 is a complete code within itself, and that as it provides for no suit in equity to cancel an unlawful levy of taxes, no such suit can be maintained.   (a) That would be a startling proposition if true.  Such a rule would nullify Section 10 of Article II of the Constitution, which says that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay."  White v. Delano, 270 Mo. 29;  Cement Co. v. Gas Co., 255 Mo. 33.   (b)  General jurisdiction which courts have over a subject can be impaired only by words negativing its existence or exercise.  Lackland v. Walker, 151 Mo. 265. · The Act of 1913, sec. 16, p. 242, prohibited an appeal from a judgment assessing benefits

and damages in all cases except in the matter of assessing damages. But it was in no other sense a code unto itself. It did not by its words negative the general jurisdiction of courts of equity to cancel a void levy of taxes based upon legislative decrees which it had no power to make. Schubach v. McDonald, 179 Mo. 182; State ex rel. v. Sale, 188 Mo. 496.

ELDER, J.—This is an original proceeding for a writ of prohibition. Relator Norborne Land Drainage District Company of Carroll County, Missouri, is a drainage district corporation, and relators H. H. Franken and others constitute the board of supervisors of said district. Relator Joe Franken is the secretary and treasurer of said district. Respondent Hughes is Judge of the Seventh Judicial Circuit of Missouri, and as such is acting Judge of the Circuit Court of Ray and Carroll Counties. Respondents Cole and others are plaintiffs in a suit now pending in the Circuit Court of Ray County, wherein relators are defendants, in which suit it is sought to declare null and void a judgment rendered by the Circuit Court of Carroll County extending the boundary lines of said drainage district, and to cancel a tax for benefits levied by defendants on the lands of said plaintiffs. The remedy sought herein is to prevent respondent Hughes from assuming jurisdiction and trying the said suit. This same litigation, in a different form, has recently been before this court. [State ex inf. McAllister v. Norborne Land Drain. Dist. Co., 290 Mo. 91, 234 S. W. 344.]

Relators' petition for our writ of prohibition, which petition is quite lengthy, alleges substantially that the Norborne Land Drainage District Company was organized as a drainage district by decree of the Circuit Court of Carroll County rendered May 12, 1899; that said district comprised 14,400 acres, a majority thereof being situated in Carroll County; that said district was organized under the Act of 1913 (Laws of Missouri, 1913, pp. 232-267) by decree of the Circuit Court

of Carroll County rendered January 12, 1917; that within thirty days thereafter a meeting of the landowners was held and a board of supervisors for said district was duly elected, which board, within the time required by law, employed a chief engineer to prepare and submit a plan for reclaiming the land within said district, which said plan was duly made by said engineer and, on December 5, 1917, adopted by the board; that on December 5, 1917, the board of supervisors filed with the Clerk of the Circuit Court of Carroll County a petition for the extension of the boundary lines of said district so as to include large bodies of adjacent and contiguous, wet, swamp and overflow lands, comprising in said extended boundaries approximately 40,000 acres in Carroll and Ray Counties, including lands owned by the private respondents herein; that notice of the filing of said petition was duly given and that objections were thereafter filed by certain of respondents herein to the granting of the prayer of said petition; that thereafter a hearing was had by the said Circuit Court of Carroll County upon the said petition and the objections thereto, after which said court, on August 12, 1918, rendered its decree extending the boundary lines of said district so as to include the lands of the private respondents herein in Ray County, and other lands; that thereafter the Judge of the said Circuit Court of Carroll County appointed commissioners to assess benefits and damages in said district as extended; that said commissioners made report of their findings, said report being duly filed with the Clerk of the Circuit Court of Carroll County, and notice of the filing thereof being given as required by law; that exceptions were filed to said report by certain of respondents, and that thereafter, on December 23, 1919, said Circuit Court of Carroll County rendered its decree modifying and confirming the commissioners' report, and assessing benefits in the aggregate sum of $1,154,345.02 against the lands of the private respondents herein and other lands; that on January 3, 1921, this court issued its preliminary writ of *quo warranto* in the

case of State ex inf. McAllister, Attorney-General, ex rel. Charles D. Cole et al, relators, v. Norborne Land Drain. Dist. Company, 290 Mo. 91, calling upon the respondent drainage company to show by what right and authority it held and exercised its franchises over the lands of said relators; that respondent drainage company filed its answer and return in said cause and the same coming on or hearing, this court en banc, on October 20, 1921, rendered judgment quashing said writ of *quo warranto;* that after the rendition of said judgment by this court the board of supervisors of said drainage district met and adopted a resolution finding that it was necessary that said district issue bonds in the aggregate sum of $550,000 to pay the cost of constructing the works provided for in the plan of reclamation of said district, which resolution provided that advertisements be given for the sale of said bonds and receiving bids therefor, and further provided that the actual amount of bonds to be delivered to the purchasers thereof should be the total bond issue less such amount as might be paid in cash by the landowners in said district; that said bonds were duly sold on November 4, 1921, to the Commerce Trust Company of Kansas City, Missouri, and its associates, and it was agreed by resolution to deliver the bonds to the purchasers thereof by January 1, 1922, in the amount of $550,000, less such amount as the landowners in said district might pay in cash; that thereafter the board of supervisors of said district by resolution duly levied and assessed against the land and other property in said district benefit assessments in the aggregate sum of $1,088,992.65, said sum representing assessments to pay the principal of the bond issue in the sum of $515,000 (said issue having been reduced by $35,000 in cash paid in by landowners), together with ten per cent for emergencies and interest to accrue at the rate of six per cent per annum during the term of said bond issue; that said assessments are duly evidenced by certified drainage tax records now on file in the offices of the Recorders of Deeds for Ray and Carroll Counties; that on

December 31, 1921, said $515,000 of bonds were duly executed and registered by the State Auditor of the State of Missouri, and are now in the custody of the treasurer of the drainage company awaiting to be delivered to the aforesaid Commerce Trust Company and its associates, but that the same cannot be delivered because of the litigation now pending against said drainage company in the Circuit Court of Ray County, hereinafter referred to; that after said bonds had been sold as aforesaid, advertisements for bids for the construction of ditches provided in said plan of reclamation were made and bids were received and contracts let for the construction of said work, and that the contractors are now ready to proceed with the construction of said work when said bonds are delivered, at which time the money necessary for said work will be received from the purchasers of said bonds; that the private respondents herein had full knowledge that the bonds of said district were being sold as aforesaid and that bids for the construction of said works had been received, and the suit hereinafter referred to was filed for the purpose of harrassing and annoying relators and delaying the construction of the works of said district; that on January 3, 1922, there was filed in the office of the Clerk of the Circuit Court of Ray County, a petition in which the plaintiffs are the same identical parties as the private relators in said *quo warranto* proceeding above referred to, and that the defendants in said suit are the relators herein; that the petition in said suit is practically a verbatim copy of the petition filed in this court for said writ of *quo warranto* and seeks to annul and vacate said decree of the Circuit Court of Carroll County of August 12, 1918, extending the boundary lines of said district, and the decree of December 23, 1919, confirming and modifying the commissioners' report, for identically the same reasons that it was sought to have said judgment vacated in this court in said proceeding by *quo warranto;* that practically the only difference in the petition filed in the Circuit Court

of Ray County and the petition filed in this court in *quo warranto* (except the prayer thereof) is that said petition now pending in Ray County alleges in addition that said judgments of August 12, 1918, and December 23, 1919, and the taxes assessed in said district, constitute a cloud on the title of the lands in said district and prays that said cloud be removed.

Here the petition in the instant proceeding sets out in full the petition filed in the Circuit Court of Ray County. The latter is extremely lengthy, comprising 37 pages of the printed abstract. We will not endeavor to reproduce it. Suffice it to say that by actual comparison with the petition in the *quo warranto* proceeding of State ex inf. McAllister v. Norborne Land Drainage District Company, 290 Mo. 91, 234 S. W. 344, we find that it is in the main a verbatim copy therof. The only practical difference is that the petition in the Ray County suit avers, in addition, that the levy of taxes by the board of supervisors, made pursuant to the decrees of August 12, 1918, and December 23, 1919, constitutes a cloud upon the title of plaintiffs' land, and that plaintiffs have no remedy save in equity. The prayer in part is, that the judgment of the Circuit Court of Carroll County extending the boundary lines of the district, and the judgment confirming the commissioners' report assessing benefits, be declared null and void. (This was in part the same relief prayed for in the *quo warranto* proceeding). The remaining portion of the prayer in the Ray County petition is that "the apparent lien of said commissioners' report on lands of plaintiffs be cancelled and for naught held, and the apparent lien thereof be cancelled and removed and be declared not to be a lien, and the cloud cast thereby on the title of plaintiffs be removed;" and that the tax levy made upon the lands of plaintiffs be declared illegal, null and void.

Proceeding, the petition in the instant application for our writ of prohibition alleges that of 43 persons originally named as plaintiffs in the Ray County suit, 34 thereof have withdrawn their names as plaintiffs on the ground

that their names were used without their knowledge or consent; that while the petition in the Ray County suit contains a prayer for the removal of the alleged cloud on the title of land of the plaintiffs therein, said suit is for the real purpose of annulling said judgments of the Circuit Court of Carroll County; that upon the filing of the said petition, the Clerk of the Circuit Court of Ray County issued process and summons therein, and that relators have been summoned to appear to answer at the February, 1922, term of said court; that respondent Hughes, if not prohibited from so doing by this court, will hear said cause during said term; that respondent has no jurisdiction of said cause, and is exceeding and attempting to exceed his jurisdiction, power and authority.

On February 21, 1922, a preliminary rule was granted by this court, returnable within ten days thereafter.

On February 28, 1922, respondent Hughes, in lieu of return to the preliminary rule, filed a demurrer to the petition. On the same day relators filed a motion for judgment on the pleadings. On March 2, 1922, the remaining respondents herein filed a demurrer to the petition. The cause is therefore to be determined upon the law as applied to the facts stated in relators' petition.

Pursuant to stipulation of counsel for both parties, the cause has been submitted on printed briefs and arguments, oral arguments being waived.

I. The real question before us is one of venue. If the Circuit Court of Ray County lacks jurisdiction, or is assuming authority in excess of its jurisdiction, prohibition will lie. [State ex rel. Orr v. Latshaw, 291 Mo. 592; State ex rel. Tuller v. Seehorn, 246 Mo. l. c. 585; State ex rel. Judah v. Fort, 210 Mo. l. c. 525; State ex rel. Knisely v. Trustees, Y. W. C. A., 268 Mo. l. c. 168; State ex rel. United Rys. Co. v. Wiethaupt, 238 Mo. 155.]

**Drainage District Law: Jurisdiction: Venue.**

Relators contend that Section 4379, Revised Statutes 1919, fixes the venue of all actions affecting drain-

age districts organized under the Act of 1913 in the county in which the articles of association of said district were filed, and that in the case at bar such county is Carroll County and not Ray. Section 4379 provides in part as follows:

"The circuit court of the county in which said articles of association have been filed *shall thereafter maintain and have original and exclusive jurisdiction* coextensive with the boundaries and limits of said district without regard to county lines, *for all purposes of this article.*" (Italics ours).

The purposes of the article embracing said Section 4379 (Art. 1, Chap. 28, R. S. 1919) are many, covering practically every phase of drainage districts when organized by circuit courts. It provides for the initial formation of districts and the hearing of objections thereto; for the creation of a board of supervisors, defining their duties; for the appointment of a chief engineer and assistants, defining their duties; for the levy of a tax to pay the cost of organization; for the appointment of commissioners to assess benefits and damages; for the filing and hearing of exceptions to any assessment made; for the levy of a tax to pay the cost of proposed works and improvements; for the collection of any tax so levied; for the establishment of a lien on lands against which any such tax may be levied; for the issuance of bonds to pay the cost of works and improvements; for the levy of a maintenance tax, to maintain and preserve ditches, drains, levees and improvements; for the consolidation of a district with adjacent districts; for the reorganization of districts; for the extension of the boundary lines of districts, etc. In addition to prescribing the venue of all proceedings, as enunciated by Section 4379, the article otherwise zealously guards certain procedural features of actions to be brought thereunder by providing that no change of venue shall be taken except as in civil cases, that no action shall abate by reason of the death of a party, that no appeal shall act as a supersedeas or to delay any action or the prosecution of

any work begun, and that no right, remedy or lien theretofore given or created, shall be abridged, impaired or nullified.

We have heretofore held that the act (Art. 1, Chap. 28, R. S. 1919) is a special act, independent of the Civil Code, and not governed thereby—that it is a code unto itself. [State ex inf. McAllister v. Norborne Land Drainage Dist. Co., 290 Mo. 91, 234 S. W. l. c. 348; Mississippi & Fox River Drainage District v. Ackley, 270 Mo. l. c. 173.] That being true we must look to the act itself for a determination of questions of procedure. By Section 4379, above noted, it is specifically provided that the circuit court of the county in which the articles of association have been filed (in this instance Carroll County) shall have *original and exclusive jurisdiction for all purposes,* without regard to county lines. This language is clear and unambiguous. It comprehends a suit which has for its purpose the annulment of a judgment extending the boundary lines of the district, or one confirming a report of commissioners assessing benefits and damages. It likewise comprehends a suit which has for its purpose the cancellation of a lien created by a tax levy. All such matters are an outgrowth of, or are related to, the purposes of the act. They are manifestly germane thereto.

Furthermore, it is provided by Section 4438 of the act: "This article is hereby declared to be remedial in character and purpose, and shall be liberally construed by the courts in carrying out this legislative intent and purpose."

With this express declaration of legislative intent before us, we feel particularly called upon to give the fullest force and effect to each section, construing it in the light of the spirit and reason of the law. And it is not illogical that the purposes of the act can best be effectuated by the court which initially brought the instant drainage district into being, and which later promulgated the orders and approved the action sought to be attacked.

After mature consideration, and after a careful review of the entire act, we are therefore of the opinion,

and so hold, that Section 4379 fixes the original venue of all actions affecting drainage districts organized under what is now Article 1 of Chapter 28, Revised Statutes 1919, and that such venue is the county in which the articles of association of the particular district have been filed. Such being the case, and the Norborne Land Drainage District Company having been organized by the Circuit Court of Carroll County, it follows that the Circuit Court of Ray County is without jurisdiction to try the suit brought by respondents Cole and others against the relators herein.

Other reasons for lack of jurisdiction are urged by relators. However, in view of our ruling above it becomes unnecessary to pass upon the additional reasons assigned.

Our order is that the preliminary rule heretofore granted be made absolute. *Woodson, Higbee* and *Walker, JJ.*, concur; *Graves, J.*, concurs in separate opinion in which *James T. Blair, C. J., Higbee, David E. Blair, Walker* and *Elder, JJ.*, concur.

GRAVES, J. (concurring).—I concur fully in all that is said by Judge ELDER in the majority opinion. Upon the question therein discussed I would not add to or take from in the last. But this case (in different forms and phases) has had a checkered career. With the divers attacks upon this drainage district this court is familiar.

It is time that the matter be for all time foreclosed. In the several contests it has been persistently urged that Section 40 of the Act of 1913 (Laws 1913, p. 254) violates both the State and Federal Constitutions. Up to this time, the constitutionality of this act under the Federal Constitution has not been ruled by this court. We think it should be ruled upon in this case, and further litigation in that way prevented. This we say advisedly from the briefs herein.

The record shows that the action in the Ray County Circuit Court is one (as denominated by the plaintiffs

*Constitutional Law: Drainage District Law: Section 40 of Act of 1913.*

therein) to remove cloud upon land titles. These clouds they aver were occasioned by a judgment of the Carroll County Circuit Court in extending the boundary lines of the drainage district so as to include the lands involved in the Ray County suit. The sole power of the Carroll County Circuit Court to extend boundary lines of a drainage district, and take in other lands, is the power granted by Section 40 of the Act of 1913, supra, If this section be unconstitutional, the judgment of the Carroll County Circuit Court extending the boundary lines of this district, and taking in new territory is void, and that court has not the jurisdiction that the majority opinion accords to it.

In this case in prohibition, we are to determine the jurisdiction of the Ray County Circuit Court, it is true, but in finding against its jurisdiction, we find that the jurisdiction is in the Carroll County Circuit Court. There can be no jurisdiction in the Circuit Court of Carroll County over the lands in this extension, if Section 40 of the Act of 1913 is void. So that it occurs to us the question is properly in this case, in that we are saying in the majority opinion that the jurisdiction is in the Carroll County Circuit Court.

Not only so, but in this case appears the pleading in the Ray County Circuit Court. In that petition it is urged that the Carroll County Circuit Court was without jurisdiction, because said Sections 2 and 40 of our Act of 1913, supra, violated Section 1 of the XIV. Amendment to the Federal Constitution.

This question is fully urged in the first statement and brief in the case now before us. The statement fully outlines the case and Point IV of the respondent's brief reads:

"If the decrees of the Circuit Court of Carroll County were made in the exercise of judicial power, and were unauthorized, because said court had no power to make them or because the statute which it was supposed gave the court said power was unconstitutional, as is alleged, the Circuit Court of Ray County has jurisdiction to can-

cel the levy of taxes made on Ray County lands based upon said decrees.''

Hereunder is quite a list of cited authorities. From the statement made just before in the brief this point refers to Section 40 of the Act of 1913. Throughout this, brief the point is urged.' The later reply brief is not so insistent upon this point, but rather intimates that it is not necessary to measure this Section 40 by the yardstick of the Constitution. Light of another prospective action against this drainage district was perhaps dawning, when the last brief for respondents was filed. Respondents have presented the question, and we think it is (as pointed out above) sufficiently in the case to require our decision. So, to what our brother has written, I will add a discussion of that question.

II.    Section 40 of the Act of 1913 (Laws 1913, p. 254) provides for several different things, among which is that a drainage district already organized may extend its boundaries. This may be done in one or two ways, (1) the board of supervisors may petition the circuit court for such extension, or (2) adjacent landowners may petition the court. It also provides for changing the plan of reclamation, and other things. But none of the things can be done without notice to the parties interested, and a hearing before the court having jurisdiction. In this case the board of supervisors took the initiative, and it was upon this petition that the changes in the boundary lines were made, and all this was done under the authority of Section 40, supra. If this section is void, then the judgment of the Carroll County Circuit Court making these changes, and including the lands involved in the Ray County Circuit Court, is void, and the Circuit Court of Carroll County has no jurisdiction of this added territory. It is for this reason that I think this matter should be determined, before we announce, as we so do in the majority opinion, that the jurisdiction is in the Carroll County Circuit Court. Jurisdiction over the enlarged district is in the Circuit Court of Carroll County, if this Section 40 is valid.

The discussion of the Federal question will dispose of all questions, both State and Federal. The XIV. Amendment to the Federal Constitution, Section 1, (the portion here involved) goes to the equal protection of the law, and due process. There is absolutely nothing in Section 40 of the Act of 1913 which denies to the citizen either of the things guaranteed by this portion of the Federal Constitution. The section provides for the institution of a proceeding either to change the plan of reclamation, or to change the boundary lines. Owners of land adjacent to a district already formed might be interested in either of these matters, but under this Section 40 they would have to be notified and have a hearing in a duly constituted tribunal.

This Act of 1913 is not the first law authorizing the extension of the boundary lines of drainage districts. In Squaw Creek Drainage District v. Turney, 235 Mo. 80, this court had up the matter of extending drainage districts under the Act of 1895. In this case the point was made that outside territory could not be taken in and made to pay obligations already created by the original organization. We ruled that no constitutional provision prevented the extension of this district.

So, too, in Elsberry Drainage District v. Harris, 267 Mo. 139, counsel urged that the notice (by publication) was not due process of law, but whilst we reversed and remanded that cause upon another ground, this particular contention was not sustained. We have here a case for extension under the Act of 1913, and we again approved the Squaw Creek Drainage District Case, supra. We have long since held that notice by publication in cases under drainage laws is sufficient even against residents of the county. [Drainage District v. Campbell, 154 Mo. 151.] The validity of drainage laws in general is fully discussed in Land & Stock Co. v. Miller, 170 Mo. 241. And the validity of such laws under the XIV. Amendment to the Federal Constitution is fully discussed in Hagar v. Reclamation District, 111 U. S. 701, and subsequent cases follow this case.

It is suggested that an inequality is created by our Section 40, in that the landowners come in under different circumstances from those in the original district. It may be true that some of them are unwillingly brought in, but such is the case in the organization of the original district. So also there is a difference in the bringing in of new territory to a previously incorporated city or town, but such laws have been upheld generally. [Carrithers v. City of Shelbyville, 104 S. W. 744, 17 L. R. A. (N. S.) 421.]

Our Section 40 of the Act of 1913 provides for a hearing upon all questions vital to the interest of the parties. They have their day in court upon all vital questions. There is no failure of due process, nor is there inequality before the law. There is due process and equal protection, and the claim to the contrary is without foundation.

With this added discussion, I agree to the opinion. *James T. Blair, C. J.,* and *Elder, Higbee, David E. Blair,* and *Walker, JJ.,* concur in these views.